Mr. Justice Black,
with whom Mr. Justice Douglas joins,
dissenting.
The appellee was indicted for conspiracy[1] and violation of § 1 of the Sherman Act[2] shortly after he had *240 appeared and testified about the alleged violation before a Committee of Congress in obedience to its subpoena. The District Court dismissed the indictment on the ground that the prosecution was barred by the Antitrust Immunity Act of February 25, 1903,[3] as amended in 1906.[4] The Immunity Act provides:
“. . . no person shall be prosecuted or be subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise, in any proceeding, suit, or prosecution under said [Interstate Commerce or Antitrust[5]] Acts
The 1903 Act was amended in 1906 so as to limit its application “only to a natural person who, in obedience to a subpoena, gives testimony under oath or produces evidence, documentary or otherwise, under oath.” The Court holds that the word “proceeding” in the 1903 Act “applies only to persons testifying in judicial proceedings.” This narrow and grudging interpretation of the Act is, in my judgment, not justified by either the language or the history of the legislation.
The Court appears to find much comfort for its holding in the Act’s language appropriating funds to the Attorney General for the employment of special counsel and agents of the Department of Justice “to conduct proceedings, suits, and prosecutions under said [Interstate Commerce or Antitrust] Acts in the courts of the United *241 States.” The Immunity Act itself was appended to the appropriation language following the word “Provided.” But the appropriation provision was merely utilized as a legislative vehicle for passage of the substantive Immunity Act in the form of a proviso. The language after the word “Provided” is a separate and distinct immunity enactment, itself part of an immunity program enacted by Congress in 1903 in order to aid in the enforcement of the Antitrust Acts by compelling witnesses to testify upon this broad statutory promise of immunity by the Government.[6] This immunity provision of the 1903 enactment is complete in itself, independent of the appropriation provision. In fact, so independent is the immunity provision, that in the codification of the statute, 15 U. S. C. § 32, the appropriation provision has been dropped altogether, making the majority’s effort to limit the immunity provision’s language by that of the appropriation provision even more strained. Therefore the 1903 Act, as amended in 1906, clearly — unless the meaning of its language is to be amended by judicial decree — stands as a lasting obligation upon the Government to give complete immunity to a witness who testifies “in obedience to a subpoena . . . under oath,” not merely in a “suit, or prosecution under said Acts” but “in any proceeding . . . under said [Interstate Commerce or Antitrust] Acts.” The word “proceeding,” broad enough to include testimony before a grand jury, Hále v. Henkel, 201 U. S. 43, is also broad enough to include testimony given under oath in obedience to a subpoena before any federal agency or legislative committee investigating antitrust violations.
*242 The historical setting of the 1903 Immunity Act shows, I think, beyond any shadow of a doubt, that the word “proceeding” was deliberately chosen in order to provide a grant of immunity for testimony concerning antitrust violations given before investigatory agencies that were wholly nonjudicial. During the month of February 1903, Congress also passed an Act, including provisions for immunity, which established the Department of Commerce and Labor and conferred upon the Commissioner of Corporations (an official of the Department of Commerce and Labor) the investigatory powers possessed by the Interstate Commerce Commission. 32 Stat. 825, 828. See also 32 Stat. 847, 848. Soon after the 1903 legislation was passed, officers of Armour & Company testified voluntarily before the Commissioner of Corporations concerning antitrust violations. The company and the officers were later indicted by a federal grand jury for violation of the Sherman Act. United States District Judge Humphrey in 1905, in United States v. Armour & Co., 142 F. 808 (D. C. N. D. Ill.), directed a verdict for the individual defendants on the ground that the Antitrust Immunity Act of February 25, 1903, gave individuals who testified before the Commissioner of Corporations complete immunity from prosecution. The district judge held that this immunity was granted both by that Act (the Act here in question) and by the Commerce and Labor Act of 1903, supra. As to the applicability of the Act before us, he said:
“If it shall be said that the act of February 14, 1903, establishing the Department of Commerce and Labor, allows immunity to the witness only upon the conditions urged by the government, viz., that he shall have resisted until regularly subpoenaed and sworn, no such contention can fairly be made as to the immunity clause of the act of February 25, *243 1903. ... It is contended that . . . the defendants are entitled to immunity under the independent and unconditional act of February 25, 1903, and I am of opinion that they are so entitled.” [7]
Judge Humphrey held that both the Commerce and Labor Act and the Antitrust Immunity Act now before us granted complete immunity. His holding as to the latter Act cannot be dismissed, as the Court attempts to do, by calling it “dictum.”
The subsequent legislative treatment of the Antitrust Immunity Act of 1903 supports Judge Humphrey’s holding that the complete immunity which that Act granted was not limited to testimony given in judicial proceedings only. The part of Judge Humphrey’s opinion that caused great concern to the Government was his holding that witnesses obtained complete immunity from prosecution based on their testimony even though they had not been subpoenaed or put under oath. This concern prompted President Theodore Roosevelt to send a message to Congress requesting that the law be amended in this respect. The President’s message specifically showed that he did not want to take away the immunity of witnesses who testified or produced documentary evidence, but simply wanted the law to grant immunity only to witnesses who appeared under subpoena and testified under oath — that is, those who were compelled to testify. Showing that this was his only objection to Judge Humphrey’s holding, the President in his message told the Congress:
“It is of course necessary, under the Constitution and the laws, that persons who give testimony or produce evidence as witnesses should receive immunity from prosecution.” [8]
*244 Without at all attempting to limit the kinds of “proceeding” in which the witness can earn the promised immunity, Congress followed the President’s suggestion and provided in the 1906 amendment to the 1903 Immunity Act now before us that the immunity would apply only to individuals testifying in obedience to subpoena and under oath. After thorough scrutiny of the Armour decision, Congress, agreeing with President Roosevelt, made no move to change the part of the holding which stated flatly that the antitrust immunity provision of the Act of February 25, 1903, applied to witnesses testifying before the Commissioner of Corporations, and so was not limited to “judicial proceedings.” And this part of the Armour holding did not pass unnoticed, for Congressman Little-field, who presented to the House of Representatives the Attorney General’s request for an amendment to the Antitrust Immunity Act, told the House:
“Perhaps I ought to say that, in my judgment, the legislation upon which Judge Humphrey largely based his ruling was not the act relating to interstate commerce, under which the Interstate Commerce Commission acts, nor the act creating the Bureau of Corporations, under which the Commissioner of Corporations acts, but probably the resolution appropriating $500,000, which contained a very broad and loosely drawn provision in relation to immunity. I am not authorized to say upon what the judge based his decision; but having read what he did say, it is rather my judgment that he was controlled in his conclusion very largely by the language contained in that appropriation, which was, in my judgment, very much broader than is found in the interstate-commerce act or in the act creating the Department of Commerce and Labor.” [9]
*245 And in the Senate debate on the 1906 amendment, Senator Daniel expressed an understanding which no one questioned:
“I suppose that the bill under consideration as it reads now applies only to persons who testify in a judicial proceeding or to those who are responding to some body such as a Congressional committee that has the right to enforce an answer from a witness.” [10]
Senator Knox, the manager of the amendment in the Senate, thereupon explained the bill to Senator Daniel in detail, never contradicting what Senator Daniel had said on this point. Neither Congressman Littlefield, Senator Daniel, Senator Knox, nor any other member of Congress suggested altering the Armour holding that the Antitrust Immunity Act of 1903 was not limited to judicial proceedings — none, in fact, ever questioned it— because that holding, it may fairly be inferred, correctly read the intent of an almost identical Congress in passing the Act three years earlier.[11]
From that day until this no one seems ever to have doubted that this reading of the 1903 Antitrust Immunity Act was correct. In fact, in 1942 this Court obviously read the statute the same way in United States v. Monia, 317 U. S. 424. Monia and another claimed complete immunity under that Act as amended in 1906 because they had testified before a federal grand jury inquiring into alleged violations of the federal antitrust laws. The Act *246 was fully considered in the majority opinion by Mr. Justice Roberts and in the dissenting opinion of Mr. Justice Frankfurter. Not only was there in that case no intimation that the immunity provided in the Act was for testimony given before judicial agencies only, but both opinions went on a precisely opposite assumption. In holding that the Act gave immunity even to a witness who had not asserted his Fifth Amendment privilege against being compelled to testify against himself, Mr. Justice Roberts speaking for the Court treated the 1903 Act before us as covering the same kinds of “proceedings” as the immunity provisions of the Interstate Commerce Act, as amended in 1893,[12] which gave a complete immunity for testimony given before the Commission. Moreover, in his detailed dissent Mr. Justice Frankfurter referred at length to the immunity provisions contained in various statutes establishing governmental agencies both before and after the passage of the 1903 Act, such as the Securities Act,[13] the Public Utility Holding Company Act,[14] the Motor Carrier Act,[15] the Fair Labor Standards Act,[16] and various others. 317 U. S. 424, 431. Surely all these were not cited in the belief that the 1903 Act related to testimony given before judicial bodies only. It is plain beyond doubt that they were referred to on the assumption that the 1903 Act granted whatever immunity it did, not merely for testimony given before judicial bodies, but for testimony given before all the various governmental agencies that subpoena witnesses to give evidence before them on antitrust matters.
The Antitrust Immunity Act of 1903 was passed at a time when the fear of prosecution was making testi *247 mony from witnesses often impossible to obtain and thereby impeding enforcement of the antitrust laws. It was passed by a Congress friendly to those laws, not to frustrate but to help enforce them.[17] Whether it was a wise or, in the case of an unwilling witness, constitutionally legitimate[18] means for Congress to use in seeking that goal is not the issue in this case. Wise or unwise, it was a solemn promise made by Congress which I think the Government should keep, just as I thought that the Government should have been compelled to keep a solemn promise of immunity made by the Secretary of the Treasury in Shotwell Mfg. Co. v. United States, 371 U. S. 341, 367 (dissenting opinion). The very fact that the Court must labor so long and hard to reach its result is in my judgment strong evidence that that result should not have been reached, for I think that when the Government makes an obligation in broad terms on which individuals have a reasonable right to rely, it should not seek to have all doubts resolved in its own favor against the private citizens who have taken it at its word. Important as I believe the antitrust laws to be, I believe it is more important still that there should be no room for anyone to doubt that when the Government makes a promise, it keeps it. Cf. Federal Power Comm’n v. Tuscarora Indian Nation, 362 U. S. 99, 124 (dissenting opinion).
I would affirm the judgment.

 62 Stat. 701, 18 U. S. C. § 371.

 26 Stat. 209, as amended, 15 U. S. C. § 1.

 32 Stat. 854, 904, 15 U. S. C. § 32.

 34 Stat. 798, 15 U. S. C. § 33.

 The Acts with respect to which immunity from prosecution was given are the Interstate Commerce Act, 24 Stat. 379, as amended, 49 U. S. C. §§ 1-27, 41-43, 301-327, the Sherman Act, 26 Stat. 209, as amended, 15 U. S. C. §§ 1-7, and the antitrust provisions of the Wilson Tariff Act of 1894, §§ 73-76, 28 Stat. 509, 570, as amended, 15 U. S. C. §§8-11.

 See also the identical immunity provisions in the Commerce and Labor Act of February 14, 1903, § 6, 32 Stat. 825, 828, incorporating by reference Compulsory Testimony Amendment of 1893 to the Interstate Commerce Act, 27 Stat. 443, 49 U. S. C. § 46, and in the Elkins Amendment to the Interstate Commerce Act, Act of February 19, 1903, § 3, 32 Stat. 847, 848, 49 ü. S. C. §§ 41-43.

 142 F., at 826.

 Message of the President, H. R. Doc. No. 706, 59th Cong., 1st Sess., p. 2.

 40 Cong. Rec. 8738,

 40 Cong. Ree. 7657 (emphasis supplied).

 I agree with the Court that Congress in the 1906 statute did not “manifest any intent to enlarge the reach of the immunity provision of the Act of February 25, 1903, to include nonjudicial proceedings.” Ante, p. 104. But the Act of 1903, as pointed out above, clearly applied to nonjudicial proceedings without any enlargement; it was never limited to judicial “proceedings,” but granted complete immunity to witnesses who testified before governmental agencies other than those that could be called judicial.

 27 Stat. 443, 49 U. S. C. § 46.

 48 Stat. 74, 87, 15 U. S. C. § 77v (c).

 49 Stat. 803, 832, 15 U. S. C. § 79r.

 49 Stat. 543, 550, 49 U. S. C. §305 (d).

 52 Stat. 1060, 1065, 29 U. S. C. § 209.

 See 36 Cong. Ree. 411-419. The provision was not debated in the Senate. See id., 989-990.

 Compare Ullmann v. United States, 350 U. S. 422, 440 (dissenting opinion).